UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZTE (USA) INC., <br> Plaintiff, <br> v. <br> AGIS SOFTWARE DEVELOPMENT LLC, <br> Defendant. | Case No. 18-cv-06185-HSG <br><br> **ORDER DENYING MOTION TO SUPPLEMENT RECORD; DENYING MOTION TO DISMISS; AND DENYING MOTION FOR SANCTIONS** <br><br> Re: Dkt. Nos. 41, 48, 107 |

Pending before the Court is Defendant AGIS Software Development LLC's ("AGIS Software") motion to dismiss the Second Amended Complaint ("SAC") for lack of personal jurisdiction and Defendant's motion for sanctions. *See* Dkt. Nos. 41, 48. The Court held a hearing on the motions and took them under submission on June 14, 2019. *See* Dkt. No. 85. Plaintiff subsequently filed a motion to supplement the record. *See* Dkt. No. 107. The Court finds this motion appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

Having carefully considered the parties' arguments, the Court **DENIES** Plaintiff's motion to supplement the record, **DENIES WITHOUT PREJUDICE** Defendant's motion to dismiss, and **DENIES** Defendant's motion for sanctions.

## I. BACKGROUND

### A. Procedural History

On June 21, 2017, AGIS Software filed a patent infringement action in the Eastern District of Texas against ZTE (USA) Inc., as well as ZTE Corporation and ZTE (TX) Inc. *See AGIS Software Dev. LLC v. ZTE Corp.*, No. 2:17-cv-517 (E.D. Tex. June 21, 2017) ("*AGIS I*"), ECF No. 1. Over AGIS Software's objections, the Texas court granted the ZTE entities' motion to dismiss

for improper venue and transferred the action to the Northern District of California. *See AGIS I*, ECF No. 85. In doing so, the district court reasoned that ZTE (USA) did not have a regular and established place of business in the Eastern District of Texas. *Id.* at 3–7. ZTE (USA) requested that the case be transferred to the Northern District of California, and the district court noted that AGIS Software did not proffer an alternative. *Id.* at 7. AGIS Software subsequently filed a voluntary dismissal, and the district court dismissed the patent infringement action without prejudice. *See id.*, ECF Nos. 86, 87.

On the day of the dismissal, October 9, 2018, Plaintiff filed this declaratory judgment action in the Northern District of California, initially naming three defendants: (1) AGIS Software; (2) AGIS Holdings, Inc. ("AGIS Holdings"); and (3) Advanced Ground Information Systems, Inc. ("AGIS Inc."). *See* Dkt. No. 1. Plaintiff later amended the complaint, removing AGIS Holdings and AGIS Inc. as defendants. *See* Dkt. No. 18. In the operative Second Amended Complaint ("SAC"), Plaintiff seeks a declaratory judgment of non-infringement or unenforceability against Defendant AGIS Software as to five patents.[1] *See* Dkt. No. 39.

### B. Factual Allegations

Plaintiff alleges that Defendant AGIS Software is a wholly-owned subsidiary of AGIS Holdings. *See* SAC ¶ 3. AGIS Software, for its part, is a Texas limited liability company with its principal place of business in Texas. *See id.* ¶ 7. Plaintiff alleges that Defendant asserted the same patents-in-suit in other patent infringement actions[2]; some of these actions were against California-based companies; and as part of these cases, Defendant "conducted meaningful enforcement activities in California," including traveling to and deposing witnesses there. *Id.* ¶¶ 8–10.

Defendant now moves to dismiss the complaint, contending that notwithstanding Plaintiff's allegations, the Court lacks personal jurisdiction over AGIS Software. *See* Dkt. No. 41;

---

[1] U.S. Patent Nos. 8,213,970; 9,408,055; 9,445,251; 9,467,838; and 9,749,829 (the "patents-in-suit").
[2] *See AGIS I*; *AGIS Software Dev. LLC v. Huawei Device USA Inc. et al.*, No. 2:17-cv-513 (E.D. Tex.); *AGIS Software Dev. LLC v. LG Electronics, Inc.*, No. 2:17-cv-515 (E.D. Tex.); *AGIS Software Dev. LLC v. Apple Inc.*, No. 2:17-cv-516 (E.D. Tex.).

2

*see also* SAC ¶ 3. Defendant also seeks monetary sanctions against Plaintiff for filing this action in the Northern District of California without a proper basis for exercising personal jurisdiction. *See* Dkt. No. 48. In support of its motion to dismiss, Defendant has filed a declaration from Malcolm K. Beyer, Jr., Defendant's Chief Executive Officer, stating that Mr. Beyer resides in Florida and that AGIS Software:

- is the "sole and exclusive owner" of the patents-in-suit;
- is not registered to do business in California;
- does not have a registered agent for service of process in California;
- does not have "offices, employees, equipment, bank accounts or other assets in California";
- does not pay taxes in California;
- does not manufacture or sell products in California;
- does not solicit or engage in business in California;
- does not recruit employees in California;
- does not own, rent, or lease any property in California;
- has not filed a lawsuit in California; and
- has not retained counsel in California related to enforcing the patents-in-suit.

*See* Dkt. No. 41-1 ¶¶ 4–22.

Plaintiff does not dispute these facts. Rather, Plaintiff alleges that the Court should consider contacts that Defendant's related entities have with California. *See* Dkt. No. 59 at 8–10. Additionally, after Defendant's motion to dismiss and motion for sanctions had been heard and taken under submission, Plaintiff filed a motion to supplement the record. *See* Dkt. No. 107. In it, Plaintiff seeks to add two transcripts, which it states "suggest that AGIS conducted and solicited business in California." *See id.* at 3.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). Federal Circuit law governs the personal jurisdiction analysis in a patent-related action. *See Breckenridge Pharm., Inc. v.*

*Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006). In analyzing personal jurisdiction, the Federal Circuit engages in a two-part inquiry: (1) whether the state's long-arm statute authorizes service of process on the defendant; and (2) whether the exercise of jurisdiction comports with due process. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1377 (Fed. Cir. 2015).

Where a state, like California, "authorize[s] its courts to exercise jurisdiction over persons on any basis not inconsistent with . . . the Constitution of the United States," *see Walden v. Fiore*, 571 U.S. 277, 283 (2014), federal courts ask whether the exercise of jurisdiction over a defendant "comports with the limits imposed by federal due process," *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014); *see also* Cal. Civ. Proc. Code § 410.10 (California's long-arm statute is co-extensive with the federal due process clause). "Due process requires that the defendant have sufficient 'minimum contacts with [the forum state] such that maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Celgard*, 792 F.3d at 1377 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two categories of personal jurisdiction a plaintiff can invoke: general and specific. *LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1375 (Fed. Cir. 2000). "General jurisdiction arises when a defendant maintains 'continuous and systematic' contacts with the forum state even when the cause of action has no relation to those contacts." *LSI Indus. Inc.*, 232 F.3d at 1375 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16 (1984)). "Specific jurisdiction 'arises out of' or 'relates to' the cause of action even if those contacts are 'isolated and sporadic.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472–73 (1985)).

When a district court's determination of personal jurisdiction is based on affidavits and other written materials rather than an evidentiary hearing, the plaintiff only bears the burden of making a prima facie showing of jurisdictional facts. *Celgard*, 792 F.3d at 1378. Under a prima facie standard, the court must resolve all factual disputes, including conflicts in affidavits, in the plaintiff's favor. *Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1329 (Fed. Cir. 2008).

## III. ANALYSIS

### A. Personal Jurisdiction

Plaintiff asserts that the Court has both general and specific jurisdiction over Defendant.[3] *See* SAC ¶ 7. Because Plaintiff relies, at least in part, on the contacts of Defendant's related entities—particularly AGIS Inc.—for purposes of establishing personal jurisdiction, the Court first addresses Plaintiff's imputation argument.

#### i. Imputation

Plaintiff posits that AGIS Software is a sham entity designed to preclude jurisdiction outside the Eastern District of Texas.[4] *See* SAC ¶ 11; *see also* Dkt. No. 59 at 1, 4–10. As such, Plaintiff argues that the activities of AGIS Inc. "should be attributed" to AGIS Software and that "the two entities should be treated jointly for personal jurisdiction." *See* Dkt. No. 59 at 10.

The Federal Circuit has cautioned that "the corporate form is not to be lightly cast aside" and "the corporate entity should be recognized and upheld, unless specific, unusual circumstances call for an exception." *3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380 (Fed. Cir. 1998). Nevertheless, the corporate form is not intended to frustrate personal jurisdiction. *See In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2011) (collecting cases). Accordingly, "the contacts of a third-party may be imputed to the defendant under either an agency or alter ego theory." *Celgard*, 792 F.3d at 1379. Courts have invoked these theories where (1) "there is a unity of interest and ownership such that separate personalities [of the two entities] no longer exist"; and (2) "failure to disregard [their separate identities] would result in fraud or injustice." *See Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015) (quotations omitted).

---

[3] To the extent Plaintiff suggests that the district court in *AGIS I* addressed the issue of personal jurisdiction, the Court is not persuaded. The district court only analyzed venue under 28 U.S.C. § 1400(b), and was careful to acknowledge that its analysis was limited to the specific facts before it. *See AGIS I*, ECF. No. 85 at 6, n.5. The Court is similarly unpersuaded that the district court's personal jurisdiction analysis in *Life360, Inc. v. Advanced Ground Information Systems, Inc.*, No. 5:15-cv-00151-BLF (N.D. Cal.), somehow settles the issue, as AGIS Software was not a party to that suit. The Court thus conducts its own independent analysis.

[4] The Court declines Defendant's invitation to disregard Plaintiff's imputation argument because Plaintiff raised it in opposition, *see* Dkt. No. 47 at 2–3. The nature of Defendant and AGIS Inc.'s relationship directly bears on the question of personal jurisdiction. *Cf. Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1562–63 (Fed. Cir. 1994) (considering declaration submitted after complaint for purposes of personal jurisdiction analysis).

The Federal Circuit has also noted that exercising jurisdiction over a subsidiary may also be "fair and reasonable" for purposes of due process where the parent company:

> Incorporate[d] a holding company in another state, transfer[red] its patents to the holding company, arrange[d] to have those patents licensed back to itself by virtue of its complete control over the holding company, and threaten[ed] its competitors with infringement without fear of being a declaratory judgment defendant, save perhaps in the state of incorporation of the holding company.

*Dainippon Screen Manufacturing Co. v. CFMT, Inc.*, 142 F.3d 1266, 1267, 1270–71, & n.2 (Fed. Cir. 1998) (analyzing whether asserting personal jurisdiction was "reasonable and fair" after finding a subsidiary had sufficient contacts, on its own, with the forum state). In short, the Federal Circuit suggested in *Dainippon* that the subsidiary was created specifically to manipulate jurisdiction. *Id.* at 1271, & n.3 ("[A] patent holding subsidiary . . . cannot fairly be used to insulate patent owners from defending declaratory judgment actions in those fora where its parent company operates under the patent and engages in activities sufficient to create personal jurisdiction and declaratory judgment jurisdiction."); *accord Google Inc. v. Rockstar Consortium U.S. LP*, No. C 13-5933 CW, 2014 WL 1571807, at *3–4, & n.3 (N.D. Cal. Apr. 17, 2014) (finding evidence supported plaintiff's allegation that patent-holding subsidiary was alter ego of its parent, and "created . . . solely to dodge jurisdiction").

To support imputation in this case, Plaintiff asserts that (1) the two entities have overlapping officers, employees, and past legal representation,[5] Dkt. No. 59-2, Ex. A, ¶ 17, Dkt. No. 59-14, Ex. M at 21, Dkt. No. 30-2, ¶¶ 2–3; (2) Defendant's CEO once stated in a deposition that Defendant and AGIS Inc. "work closely with one another," Dkt. No. 59-2, Ex. A, ¶ 8; and (3) AGIS Inc. has a non-exclusive license for the patents-in-suit from Defendant, *see* Dkt. No. 59-3, Ex. B. Yet these facts, even if true, do not establish that Defendant has no identity separate and apart from AGIS Inc. At best, Plaintiff has established that the entities share a parent-subsidiary relationship, which is "insufficient, on its own, to justify imputing one entity's contacts with a

---

[5] The Court notes that some of this alleged "overlap" occurred before Defendant was created. *See* Dkt. No. 30-2, ¶¶ 2–3; *see also Advanced Ground Information Systems, Inc. v. Life360, Inc.*, No. 9:14-cv-80651-DMM (S.D. Florida), ECF. No. 32 at 2–3.

6

forum state to another for the purpose of establishing personal jurisdiction." *See Ranza*, 793 F.3d at 1070; *compare Google Inc.*, No. C 13-5933 CW, 2014 WL 1571807, at *3–4 (finding circumstances suggested subsidiary was a sham where, *inter alia*, all subsidiary employees also work for the parent; all subsidiary officers are also parent board members; and the parent and subsidiary operate out of the same suite).

Plaintiff also contends that Defendant's very creation supports a finding that it was designed to avoid jurisdiction outside Texas. *See* Dkt. No. 59 at 10.

- Defendant first registered with the Texas Secretary of State on June 1, 2017, *see* Dkt. No. 59-13;
- Approximately two weeks later, on June 15, 2017, AGIS Inc. assigned the patents-in-suit to AGIS Holdings, who in turn assigned them to Defendant, *see* SAC ¶ 11; Dkt. No. 59-15, Ex. N; and
- The day after the assignments became effective, Defendant filed four patent infringement actions in Texas. *See* Section I, n.2, *supra*.

The Court acknowledges that the Federal Circuit's dicta in *Dainippon* cautions that patent holding subsidiaries cannot be used to circumvent jurisdiction. *See Dainippon*, 142 F.3d at 1270–71. Yet the Federal Circuit has not held that the mere assignment of patents to a subsidiary renders that assignee a sham entity. *See Dainippon*, 142 F.3d at 1267, 1270–71. Although suggestive, the Court does not find that Plaintiff's allegations establish that Defendant is merely the alter ego of AGIS Inc. or was created solely to circumvent jurisdiction. *See Ranza*, 793 F.3d at 1073. The Court finds that imputation would be improper on the basis of this record, and thus cabins its subsequent analysis to those allegations specifically against Defendant.[6]

### ii. General Jurisdiction

"[A]n assertion of *general* jurisdiction requires that the defendant have continuous and systematic contacts with the forum state," although such contacts will still confer jurisdiction

---

[6] Because the Court finds imputation is improper, the Court does not consider the two transcripts Plaintiff has attached to its motion to supplement the record. *See* Dkt. No. 107. Both transcripts relate solely to AGIS Inc. and reflect events that occurred before Defendant was created. *Id.* The Court therefore **DENIES** Plaintiff's motion to supplement the record.

7

"even when the cause of action has no relationship with those contacts." *Avocent*, 552 F.3d at 1331–32 (quotation omitted). This is a high bar. As the Supreme Court has explained, for purposes of general jurisdiction, such contacts must "render [the entity] essentially at home in the forum State." *Daimler*, 571 U.S. at 122.

Here, Plaintiff contends that Defendant is subject to the Court's general jurisdiction based on Defendant's marketing, promotion, and sales of its "LifeRing and HoundDog applications" in California. *See* Dkt. No. 59 at 10–11. Plaintiff also asserts that Defendant has an interactive website and mobile applications available in California, and has a "strategic partnership" with Green Hills Software, which is based in Santa Barbara, California. *Id.* at 11. The Court is skeptical that these contacts would render an entity "essentially at home" in California, but more fundamentally, these alleged contacts relate to AGIS Inc. and not to Defendant. *See* Dkt. No. 59-7, Ex. F; Dkt. No. 59-9, Ex. H. As Plaintiff acknowledges, Defendant "is a limited liability company organized and existing under the laws of the State of Texas, and maintains its principal place of business" in Texas. *See* SAC ¶ 3. Plaintiff has failed to make a prima facie showing that the Court has general jurisdiction over Defendant.

### iii. Specific Jurisdiction

When analyzing specific personal jurisdiction, the Federal Circuit considers whether "(1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Avocent*, 552 F.3d at 1332 (quotations omitted). "The first two factors correspond with the 'minimum contacts' prong of the *International Shoe* analysis, and the third factor corresponds to the 'fair play and substantial justice' prong of the analysis." *Id.* (quotation omitted). Additionally, in a declaratory judgment action, "the nature of the claim . . . arises out of or relates to the activities of the defendant patentee in enforcing the patent or patents in suit." *Id.* Thus, "only enforcement or defense efforts *related to the patent* rather than the patentee's own commercialization efforts are to be considered for establishing specific personal jurisdiction." *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1020 (Fed. Cir. 2009) (emphasis added).

8

Stripped down to those allegations solely related to Defendant and the patents-in-suit, Plaintiff contends that the Court has specific jurisdiction over Defendant because (1) Defendant filed patent infringement suits against California residents in the Eastern District of Texas; and (2) in litigating those actions, Defendant conducted discovery in California, including traveling there for depositions and subpoenaing third-party entities that reside in California. *See* Dkt. No. 59 at 14–22; SAC ¶¶ 8, 10, 12. The Court addresses each in turn.

*First*, Plaintiff explains that Defendant filed patent infringement actions against Apple, Inc., which is incorporated under the laws of California, and against ZTE (TX), Inc., which Plaintiff asserts is a California resident.[7] *See AGIS Software Development LLC v. Apple, Inc.*, No. 2:17-cv-00516-JRG (E.D. Tex.), ECF No. 1 at ¶ 2 ("Upon information and belief, Defendant Apple is a California corporation having a principal place of business in Cupertino, California."); *AGIS I*, ECF No. 1 (Complaint against, *inter alia*, ZTE (TX), Inc.). Even assuming ZTE (TX), Inc. is indeed a resident of California, Defendant filed these two actions in the Eastern District of Texas. *Id.* Courts have repeatedly found that out-of-state enforcement activities are insufficient to establish personal jurisdiction. *See, e.g.*, *Radio Sys. Corp. v. Accession, Inc.*, 638 F.3d 785, 792 (Fed. Cir. 2011) ("[E]nforcement activities taking place outside the forum state do not give rise to personal jurisdiction in the forum."); *AU Optronics Corp. Am. v. Vista Peak Ventures, LLC*, No. 18-CV-04638-HSG, 2019 WL 690282, at *3 (N.D. Cal. Feb. 19, 2019) (collecting cases); *Kyocera Int'l, Inc. v. Semcon IP, Inc.*, No. 18-cv-1575-CAB-MDD, 2018 WL 5112056, at *3 (S.D. Cal. Oct. 19, 2018) (considering lawsuits outside of California, but against entities with principal places of business in California, "unequivocally tangential and decidedly inadequate to justify the exercise of personal jurisdiction in this case"). Indeed, the Supreme Court has explained that "the 'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *See Walden*, 571 U.S. at 285.

---

[7] The Court notes that Plaintiff has not provided any support for the suggestion in its opposition that ZTE (TX), Inc. resides in California, other than a cite to the complaint in *AGIS I*. *See* Dkt. No. 59 at 15. The complaint in that case, however, alleges that ZTE (TX) is incorporated under the laws of *Texas* and has its principal place of business in *Texas*. *See AGIS I*, ECF No. 1 at ¶ 3. Thus, Defendant does not appear to have known ZTE (TX) was a California resident.

Plaintiff nevertheless suggests that filing an action against a California resident, albeit in another jurisdiction, is tantamount to sending a cease-and-desist letter to an entity in the forum state. *See* Dkt. No. 59 at 14. Even if the Court were to accept this analogy, Plaintiff's cases do not hold that such contacts satisfy "traditional notions of fair play and substantial justice" such that personal jurisdiction is warranted. *See New World Int'l, Inc. v. Ford Glob. Techs., LLC*, 859 F.3d 1032, 1038 (Fed. Cir. 2017); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1360–61 (Fed. Cir. 1998). To the contrary, the Federal Circuit has explained that:

> Principles of fair play and substantial justice afford a patentee sufficient latitude to inform others of its patent rights without subjecting itself to jurisdiction in a foreign forum. A patentee should not subject itself to personal jurisdiction in a forum solely by informing a party who happens to be located there of suspected infringement. Grounding personal jurisdiction on such contacts alone would not comport with principles of fairness.

*Red Wing*, 148 F.3d at 1360–61.

*Second*, Plaintiff cites to discovery efforts that Defendant conducted as part of these Texas cases: subpoenaing documents from a third-party California corporation, and noticing depositions of witnesses located in California. *See, e.g.*, Dkt. No. 59-20, Ex. S; Dkt. No. 59-21, Ex. T. As an initial matter, Plaintiff does not cite any authority finding such contacts sufficient to establish personal jurisdiction. The Supreme Court has explained that contacts that are "'random,' 'fortuitous,' or 'attenuated' . . . or [the result] of the unilateral activity of another party or a third person," are insufficient for purposes of the minimum contacts analysis. *Burger King*, 471 U.S. at 475 (quotations omitted); *accord Red Wing*, 148 F.3d at 1359 (Fed. Cir. 1998). The Court finds that Defendant's discovery efforts are the result of unilateral third-party activity, namely where documents and witnesses that are related to these Eastern District of Texas infringement actions may be located. *Cf. Walden*, 571 U.S. at 285.

Although acknowledging that these contacts may be insufficient on their own to establish specific jurisdiction, *see* Dkt. No. 59 at 15–16, Plaintiff contends that when viewed collectively, specific jurisdiction is nevertheless proper. The Court is not persuaded. Plaintiff's two categories of contacts appear to collapse into one: Defendant litigated actions against California-based

10

companies. As explained above, the Court finds this ground for personal jurisdiction unavailing. Thus, the Court does not find personal jurisdiction has been established under these circumstances.

### iv. Jurisdictional Discovery

The Court has broad discretion to permit jurisdictional discovery, which "should ordinarily be granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Butcher's Union Local No. 498 v. SDC Investment, Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quotation omitted). Nevertheless, the Court may deny jurisdictional discovery if "it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction," *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977), or when the request is "based on little more than a hunch that it might yield jurisdictionally relevant facts," *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008).

The Court finds that additional discovery may yield relevant jurisdictional facts. The Court finds that Plaintiff has raised enough of a question regarding whether Defendant is a sham entity such that AGIS Inc.'s contacts with California should be imputed to Defendant for purposes of jurisdiction to warrant further discovery. Accordingly, the Court exercises its discretion and **GRANTS** Plaintiff's request to conduct jurisdictional discovery. Because the Court does not intend to indefinitely delay this action, Plaintiff shall have one month to conduct targeted discovery to support personal jurisdiction, consistent with this order. The Court therefore **SETS** October 14, 2019, as the jurisdictional discovery cut-off.

### B. Sanctions

In connection with its motion to dismiss, Defendant has also filed a motion for sanctions against Plaintiff for filing this suit in the Northern District of California. *See* Dkt. No. 48. Sanctions under Federal Rule of Civil Procedure 11 are appropriate when an attorney has certified "claims . . . [not] warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Civ. P. 11(b)(2). Although the Court has concluded as part of this order that Plaintiff has not yet alleged sufficient facts to support personal jurisdiction, the Court notes that personal jurisdiction is a

highly fact-intensive inquiry. The Court is not persuaded that Plaintiff's claims are frivolous, and thus **DENIES** the motion for sanctions.

## IV. CONCLUSION

Accordingly, the Court **DENIES WITHOUT PREJUDICE** the motion to dismiss and **DENIES** the motion for sanctions. The Court also **DENIES** Plaintiff's pending motion to supplement the record, but will permit limited jurisdictional discovery. The Court **SETS** October 14, 2019, as the jurisdictional discovery cut-off, and further **SETS** a case management conference on October 22, 2019, at 2:00 p.m.

**IT IS SO ORDERED.**

Dated: 9/12/2019

HAYWOOD S. GILLIAM, JR.
United States District Judge